Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention for the court is now sitting. God save the United States and the Honorable Court. You may be seated. Good morning. Mr. Vance, are you ready? Yes, Your Honor. You may approach. May it please the court, my name is Robert Vance and I represent the appellant Phyllis Weaver in the first case. I will be addressing a few of the issues before the court but I will leave for EEOC counsel to address the issue that she briefed in this matter. In this case, Your Honor, first I will address the issue of whether this court has jurisdiction over the appeal which the parties submitted supplemental briefs on. It is the position of the appellant that this court does have jurisdiction over this appeal because the order of the district court was a final order of the district court. The court referred to counsel to brief. This case is more like the BPJ case than the Porter case. Before we get into that, can I ask you about a different jurisdictional question I have? Sure. So you are asking us to review some things about the transfer that happened in the first court. This was Pennsylvania, I think? Yes, the court was, the complaint was filed in the United States District Court for the East District of Pennsylvania. However, Your Honor, at this point the issue of whether or not the judge in the Eastern District did or did not do something that was required, the appellant is not addressing that issue. I'm addressing the issue of what occurred with regard to the district court in North Carolina. Well, I thought there was, isn't, and if I'm wrong, I'm totally sorry. Wasn't there a section in your brief that was arguing you should have been able to take jurisdictional discovery in Pennsylvania? Yes, Your Honor, but practically speaking, it really doesn't matter whether the case is tried in Pennsylvania or North Carolina. You don't need to rely on that because there's nothing to that argument, is it? I mean, really, you can move on. Exactly. You're not going to get anywhere with that. Precisely. Yeah. Okay. All right. So the issue of whether the court has jurisdiction, as I indicated, this is a final order of the district court in North Carolina. This case is like BPJ as opposed to Porter because the district court judge in North Carolina although the complaint in this case contained three counts, a claim of race discrimination under Section 1981, a claim of race discrimination under Title VII, and a disability claim under the ADA, the district court addressed only the defendant's 12 v. 1 motion to dismiss with respect to the Title VII claim and the ADA claim based on the 90-day filing within the notice of right to requirement. The district court never addressed the Section 1981 claim, but when the district court entered judgment, it closed the entire case. So . . . Did that happen in Porter too? Well, it did in Porter, but the issue, the difference of Porter is that in that case, that was a habeas petition. In Porter, the district court there made a statement that the, I'm sorry, the appellate court in Porter made the statement that the district court in Porter did not address a central component of a claim that had been raised in the habeas corpus petition. That's different than this case. Here, we're talking about the district court not addressing an entirely separate and distinct claim altogether, not a component of a general claim. Of a claim, of a total claim. So why does . . . That seems like it makes the jurisdictional problem worse, not better. I'm not following why that makes it a better case for appellate jurisdiction. Because in Porter, you had a habeas petition where the, that listed a lot of grounds for why the petition should be granted. The district court addressed most of them, but not all of them. And in addressing most of those claims, the district court decided to dismiss the habeas petition. However, when it came on up on appeal to the Fourth Circuit, the decision was that the district court erred because although it was not a final order because there were certain aspects of the habeas petition that had not been addressed by the district court. Whereas in this case, we have three separate claims that the district court in North Carolina addressed. Or actually two, only two that the district court of North Carolina addressed. And despite its decision with regard to those claims, which of course we contend was erroneous, it dismissed the entire case without even mentioning, without even considering whether, whether the 12B6 motion that the defendants had made with regard to the section 1981 claim was legitimate or not. But it closed the case, the judgment, the, the judgment actually closed the case. So there was nothing left for the district court to do. The appellant had, my client had no alternative other than to appeal because there's no relief that we could get in the district court. Why, I mean, to take what the court said in BPJ, why couldn't your client have said motion to alter, motion to correct or alter amend, like what, why wasn't it open to your client to say, dear judge, dear district court judge, you do not seem to have addressed the 1981 claim. Please address the 1981 claim. Why was, you said there, you just said there's nothing you could have done rather than appealing. Why couldn't you have said, dear district court judge, I fear you may have overlooked the 1981 claim. What do you think about the 1981 claim? Perhaps. However, the, we chose to appeal the decision in its entirety because the district court closed the case and made erroneous rulings with regard to this, the Title VII and the ADA claim. And it is a final decision because as, as this court has stated, I believe in the BPJ case, you have to look at the substance and not so much the form. So the substance of what we have in this case is a dismissal of the entire complaint, regardless of whether one claim of the complaint was addressed or not. I have one last question about this, then I will let you get to the merits, I promise. Um, but when, when BPJ says substance though, like you have to look at the, what happened to BPJ. So in BPJ, essentially the plaintiff had two claims, a Title IX claim and an Equal Protection Clause claim. And the district court wrote a whole long opinion explaining why it, in its view, the Title IX and Equal Protection Claims failed as a matter of law. And it did so on grounds that were clearly applicable to all the defendants because like it was, this thing does not violate Title IX. This thing does not violate the Equal Protection Clause. And so when you read the district court's opinion, there's no conceivable basis that the district court overlooked a Title IX or Equal Protection Claim. And there's no conceivable argument. Like, I guess I'm trying to think about what the parties would have done in BPJ if they went back to the district court the day after the district court issued its decision in BPJ and said like, well, technically you didn't dismiss the school board. And the court would be like, I just wrote a 70-page opinion explaining to you why this policy doesn't violate Title IX or the Equal Protection Clause. So I also hold that it doesn't violate Title IX or the Equal Protection Clause. Like what would the district court have possibly said if the board had gone back the next day? Whereas here, you could have gone back and said, I don't understand why you dismissed the 1981 claim because the only basis you gave for dismissing Title VII, lack of exhaustion, doesn't apply to 1981. Judge, I'm genuinely confused why you dismissed the 1981 claim. I don't understand. And that seems like a pretty big distinction between this case and BPJ. I would have to admit, Your Honor, that that is a distinction. However, the, I believe the plaintiff can elect what to do in that circumstance. In other words, go back to the district court and ask for clarification of the order that, or I should say of the judgment that closed the case. Because as this court has, has indicated, this case deal, this court deals with judgments, not opinions. So the plaintiff could have gone back and asked for that or simply appealed to the Court of Appeals and make the arguments here, which we're, which we're making here with regard to the exhaustion issue. So with all due respect, if I can get to that. Of course. The, the bottom line with regard to the exhaustion, exhaustion issue is the question of whether or not the complaint was timely filed after the issuance of the Notice of Right to Sue is, is quintessentially a question of fact. And the district court, in its own opinion, pointed out issues of fact that, unfortunately, it presumed adverse to my client. In, in, insofar as, for example, when the notice was actually. That's an important fact. It's when it was received. The question being if there's nothing there, you then go on to the presumption, presumptive rule of the three days. Right. However, I'm sorry, Your Honor. You go, go ahead. I'm sorry, but you don't, you don't get that presumption unless you can establish that the, that the notice was properly directed. And that's, that's a, an old Supreme Court case, Hagner versus United States from 1932. And properly directed in this instance, based on the facts that were before the district court, there were numerous questions about whether the notice was properly directed because my client had moved from the time that she had filed the EEOC. There's a requirement that the client has to tell them where they are. That is true. However, the properly directed prong of that presumption is a question of fact. But more importantly, the issue is really when did she actually receive it? And, and when was it actually sent? Because as indicated in the brief, the notice of right to sue had numerous notations on it. One really, one of September 2nd, one of September 19th. And then you have a notation of October 3rd of 2019. So if in fact the notice had been sent out on October 3rd, then filing on December 27th of 2019 would have meant that that filing was timely. And so those were the questions, those were the issues of fact that the district court in North Carolina should have said, okay, there is a dispute as to these issues. I'll defer ruling on the defendant's 12B1 motion to give the parties an opportunity to take very, very limited discovery on those two issues. Well, what about the document that the EEOC director, system director or whatever sent that essentially said it was mailed on a specific date? There's, as I indicated in my brief, I've never seen that certification in the record. And maybe I missed it, but I didn't see it. And that in itself is a question of fact. If there's a certification that is contradicted by the actual notations on the notice of right to sue, then the plaintiff should have been given the opportunity to probe those inconsistencies. And the district court could have simply deferred decision on... So you're saying the certification is separate from the document? I'm saying the certification, which is what the district court relied on to say exactly when it was mailed, is it was, whether or not the certification is accurate was a question of fact because of the... When he signs that document, the EEOC director, isn't that a certification that it was mailed on that date? Perhaps, but under the factual circumstances of this case, with all of the other indicia of no, it was not mailed on that date, my client should have had the opportunity to probe that issue. I might, I get five seconds. Oh, okay. I don't really want to cut into my rebuttal time, which I appear to be doing. So I'll stop at that point. All right. Thank you, Mr. Vance. Ms. Ocalino. Good morning. May it please the court. My name is Anne-Noel Ocalino for the EEOC as amicus. We weighed in in this case to address three discrete issues. The first is we argued that the 90-day filing requirement of Title VII and the ADA is non-jurisdictional. Second, we argued that as a result of that, it was a mistake for the district court to resolve the 90-day issue on a Rule 12b1 motion to dismiss. And third, we noted that Section 1981 is not subject to Title VII or the ADA's 90-day filing requirement. And it would have been an inappropriate basis for dismissal of Ms. Weaver's 1981 claim. But the third one is a given, isn't it? That's a given. I do think it is a given. And I'd rather not... It's not subject to the 90-day requirement. No, absolutely. And that's what we noted in our brief. So I wasn't going to spend time discussing that unless you had any questions about it. Just two threshold questions. I think I know the answer, but I just want to confirm. Does the government have a view about whether we have a pallet jurisdiction? No, we did not take a position. We saw your order and we called the clerk's office to confirm whether this court expected or anticipated that we would file a supplemental brief. We were told no. So we did not do that. And I can't speak to that.  And then the only other one is, does the EEOC have a position about whether the right to sue letter was in fact mailed on September 20th? We do not think that there is evidence here to confirm that it was actually mailed on September 20th, 2019. Our brief explains that because it's non-jurisdictional, the burden is on the defendant to establish the timely filing requirement, which is in the nature of an affirmative defense, like a statute of limitations. We think that it was inappropriate, it would have been inappropriate to dismiss on a 12B6 motion in the mine run of cases where there is a dispute about the date. Okay, so let's just hypothetically assume we get to the merits decision. Do you think that the date on the letter, it would be evidence of when it was mailed? I think in a routine case where an employer points to the 90-day requirement and cites to the right to sue letter and notes that it stays on its face the day that it was mailed, that that would probably be sufficient. But this case is not the mine run of cases and I'd like to walk you through that. First, Judge, when you asked about- Before you do that, I want to make sure I understand the EEOC's position on the date. There is a document signed by an EEOC commission. Yes. That has a mailing date on it. You're saying the EEOC's position is that when that document comes out, that's not a certification by the EEOC of the mailing date? That's correct. I think it's a misuse of the term certification. There's no declaration or affidavit in the record that says- The signature the judge found. The signature is a stamp from our acting district director of the Raleigh office, Thomas Colclough. Certifies it. It says on behalf of the commission. It doesn't say I certify that this right to sue letter was put in the mail on September 20th. It does say date mailed, so I don't want to dispute that. I'm thinking about EEOC in terms of where you go forward with this. You're telling me that a document from an EEOC regional commissioner that says that's the mailing date, that's not sufficient. In EEOC's mind, I'm not, you're not aligned with the client in other ways. In other words, you chose not to go forward to it. You gave a right to sue. So you don't have, you're not pursuing this case. You could have, but you chose not to. I'm trying to see what EEOC is in terms of what a mailing date is and what does it prove. Judge Wayne, if I could just remind you that the key date is not the date that it was mailed, but usually the date of receipt. And when the date of receipt- But you determined the date of receipt based upon when it was mailed. You have a three-day presumption. Are you- Your Honor, I'm not- What is going to be your beginning point if you don't have something there? And in the mine run of cases, I do believe that when it says the date mailed is on the right to sue notice, we would go with that. We would take the three-day mailing rule. So I'm not disputing that. That's a mine run of case. In the usual case. But an unusual case is one where the plaintiff has pled in the complaint, and you must assume that is true under Rule 12b-6, motion to dismiss, the joint appendix, the page six, the complaint, a paragraph free. She pled that I filed suit within 90 days of receipt of the right to sue letter. Now the other piece- That's not sufficient. She has to state when she actually received it. I have to disagree, Your Honor. Where's the case law that says she simply can make a conclusory statement that I filed it within 90 days, that's enough? Your Honor, I don't understand your precedent to require a plaintiff to plead facts with a complaint that go to an affirmative defense. I don't understand you not giving me a case that says that. About the affirmative defense does not need to be pledged? That says that's all you have to say is I filed it within 90 days, and it doesn't matter. Even if you got evidence, if the record doesn't show it anywhere else, and you got one document says it was bailed, which is in the record, then how is it that you simply can make a conclusory statement that says I didn't, I bailed it within 90 days, and that's enough? Your Honor, I think you're unconvinced by my arguments, but I would point you to- I'm not unconvinced. I'm trying to get you to explain my point. I'm not being argumentative with you. Understand that. I want to know because, and the reason I'm telling you this is because I can let you argue this on and on. I'm trying to help you make a case because if I'm telling you we're going that way, pull me out of this hold I'm in. And I just said, you are saying it is sufficient to make a conclusory statement alone that says I did this within 90 days. And I don't believe the case law says that, but you correct me and tell me where it does. I believe the Goodman case from 2007, your en banc decision discusses this and says an affirmative defense such as the statute of limitations does not have to be pled in a complaint. So, she did not have to plead the date of receipt of the right to sue notice. She pled in the complaint that she did file sue within 90 days of the right to sue. That is exactly correct. The affirmative defense does not need, the defendant has to bring it up. So, the question is, did the defendant bring this up as an affirmative defense? I agree that the defendant did bring it up. Walgreen brought it up. That creates the issue. I'm not talking about whether she has to plead. That's your whole point. Your whole point is it's not jurisdictional because if it's jurisdictional, you got to put it in that complaint. I understand what you mean by why you are here because you don't want it to be jurisdictional. But if it is an affirmative defense, when the defendant pleads it, it throws the issue out. I mean, it's there. There's no obligation on the plaintiff to plead it. I agree with that. If I could have an opportunity, I'd pass my time. May. I think that there's three or four things that you should look at to understand that there is a dispute about the date of actual receipt of the right to sue notice. The first is the right to sue letter itself with a handwritten notation in the upper right hand corner, CW entered October 3rd, 2019. We know from the brief that Walgreens filed below that the CW refers to Christina Woodworth, their legal coordinator. Now, it seems passing strange that a letter mailed on September 20th, 2019 would not be received at their office. They were also copied until October 3rd, 2019. Second, you have Mr. Vance's declaration in the record where he tested under penalty of perjury in paragraph three of his declaration that he did not receive the right to sue notice until October 2019, which would have been 10 days after the date of mailing. And then third, we have the investigator's letter in the record, which is dated September 9th. It went out with the right to sue notice, which says it was mailed September 20th, which gives more reason to question exactly when the right to sue letter was put in the mail. Do we have any evidence as to when she was actually received it? I think the answer to that is no. You can ask Ms. Weaver's counsel about that. There is no specific evidence in the record from her, but that is all the more reason why there should have been some limited discovery. The deposition of Ms. Weaver could have been taken and she could have answered that question. I'm over my time. Do you have any more questions for me? Thank you, Ms. Sakulina. Thank you. Mr. O'Halloran. Good morning and may it please the court. My name is Shane O'Halloran and I'm here on behalf of Walgreen, the appellee in this case. Given there's a question of appellate jurisdiction here, I'll plan to address that issue first and then move on to the merits. If there's another order in which the court would prefer that I proceed, I'm happy to take your direction on that. So can I start with the merits question that I think implicates jurisdiction? Of course. Do you agree with the EEOC that, I think you do based on your brief, that there is no exhaustion requirement under 1981? Yes, we do. So when I read the district court's order, why did the district court dismiss the 1981 claim? Like, I don't mean why could he have. I understand you have arguments why the district court could have. But based on the district court's opinion and order, what am I supposed to conclude about why the district court dismissed the 1981 claim? I think that's a great question, Your Honor. Doesn't that just answer the jurisdiction? Like, so and so then the next question is why doesn't that mean we lack appellate jurisdiction? I have no idea why the district court dismissed the 1981 claim. It is our position that yes, appellate jurisdiction is lacking here for exactly that reason. Walgreens moved to dismiss the complaint. But if, if the district court got something wrong, and that's if, because that's not really the force, getting it wrong doesn't stop our jurisdiction, does it? No, of course not. Of course it doesn't say it, but based upon how I have ruled, it is moot and it's dismissed and the case was dismissed. If it's wrong, that doesn't shorten our hand as to jurisdiction. As a matter of fact, most appellants don't say that's what we're here for, correct error. Right? I would agree with that, Your Honor. I think the distinction here is that it's not that the district court got it wrong on the 1981 claim. It's that the district court did not address that claim at all. It did. It said it's moot. That is addressing it. Did the court actually say the 1980, I was so confused about this mootness, by the way, does the court say the 1981 claim is moot? Or is it to say, given what I've already said, the other motions are moot? So what the district court said is that the motion is granted as to 12B1, which is the 90-day rule argument that we made as to the ADA and the Title VII claim. We also brought a 12B6 motion for failure. So the 12B6 motion is moot because I've dismissed based on 12B1? Precisely, but we never argued that the 1981 claim was subject to dismissal under 12B1. Just while we're there, the exhaustion requirement's not jurisdictional, right? Because the Supreme Court has said it and we've said it? I would concede that, Your Honor, yes. Although it is our view that the result is the same whether the motion was— Sure, but in your brief, you say courts are split. So then I went down and I looked, and no, the Supreme Court has said it clearly in a footnote, and we've said it very clearly in Allen v. Atlas-Box and at least one other place, right? It's not unclear. The Supreme Court and this one have both said it's not jurisdictional. I would not dispute that, Your Honor. I think perhaps it would have been better to bring it under 12B6, the entire motion. What should we do with this Section 1981 claim? Send it back? Well, Your Honor, I think if— Well, if we don't have jurisdiction, just let the district court go forward? I think that's correct, Your Honor. If this court decides that it does not have jurisdiction, then the 12B—or excuse me, the 1981 claim should be remanded for consideration under our 12B6 motion. What's the alternative? Don't we just send it back anyway? I mean, he didn't address it. It looks like he folded it in with the other two claims. He couldn't do that. You heard the counsel correctly state it's not subject to the 90-day rule. That is correct, Your Honor. With that said, if this court does conclude that it possesses appellate jurisdiction, it is, of course, empowered to— Hold it, hold it. I'm not making an argument. You keep using if. I'm saying, why don't you just say courts should just remand it and move to another argument? Right. That is our primary position, Your Honor. But I would say secondarily, if the court determines that it does have jurisdiction, then it is empowered to affirm on any basis of the record. And we think it's clear— I go back to this jurisdiction. Jurisdiction is very important. Obviously, we're Article III judges, Article III court. But again, getting it wrong does not change jurisdiction. We have many cases where we find that the district court did something errant, but the jurisdiction, we used it and we said it needs to be remanded. Something left to be done does not necessarily implicate jurisdiction because what he said was that based on my rulings that the rest of it is moot. Now, my dear colleagues, we don't side cases in front of the audience, so we'll do that later. But the point is that why does that change jurisdiction? The power to look at the case, is it terminal because it was an error that clearly there was no exhaustion required and that kind of thing. But that's what he did. He ended the case and said because based on this ruling, this is moot. That's what we do a lot of times. We said, no, it needs to be remanded because we don't say we don't have jurisdiction because, well, we don't have power to look at this case now because he erred this way. I said if he did because we haven't decided that yet. Really, that's not before us. Jurisdiction is before us. Whether or not it's finality, not whether it's right or wrong. So tell me, why is that? Why are we turning it on upside down here in terms of why don't we have jurisdiction,  So, Your Honor, again, I think that the issue here is that the district court, not that it got it wrong necessarily on the 1981 claims, that it didn't acknowledge the 1981 claim at all. And in fact, the order denied as moot to the extent predicated on 12B-6, which was the only basis that Walgreens argued for dismissal of the 1981 claim. Did it say that? Tell exactly what the court said. I have it on the table over there. Oh, I thought you had that front and center. Go ahead. Sure, I'll grab it. Quote it. It's only a small print. I apologize. No, no, no, no problem. So we're looking at JA-180. Just read it. Yes. So the order reads, it is ordered, adjudged, and decreed that plaintiff's motion for leave to file on paper is granted. Defendant's motion to dismiss pursuant to federal rule of civil procedure 12B-1 is granted. The remaining portions of that motion are denied as the case is closed. Okay. Now that motion, how do you say that includes the 12B-6? You said includes that or did not? I, it did not include. Didn't include that. So we got, didn't include that at all? I'm sorry, Your Honor, the order? It didn't, the order didn't include. What else did it include? Something else, didn't it? That was the, well, oh, I'm sorry. It says the remaining portions of that motion are denied as moved. The only remaining portion of the motion was the portion brought pursuant to 12B-6. Of that motion? Correct, of defendant's motion to dismiss. And then it, didn't it dismiss the whole case? That is correct, Your Honor. Right. So what was that, what was the court doing there? Ending the case. I'm finished with it. Isn't that normally what that means? Yes, Your Honor. But, but we think that under this court's precedence and in particular under Porter, when a court fails to address an independent claim for relief, yet nevertheless purports to close the case, Porter tells us we have to look to the substance of the order rather than its form. And it's, it's our view here that the, you know, looking at the substance of this order, it is clear that the court has not adjudicated the Section 1981 claim. And as a result, we don't believe that, that there's appellate jurisdiction here. I'm happy to answer anything further on the jurisdictional question. And otherwise, I'm happy to move on. Um, so I, I was planning to address the, uh, the request for, uh, jurisdictional discovery, uh, before the Eastern District of Pennsylvania, but it sounds as though, uh, that is not... Haven't we said we don't have appellate jurisdiction to review decisions of the court before it transfers? Uh, yes, Your Honor. I don't think that there's really much to be made of that argument. So I'm happy to move past it if, if that's, uh, agreeable. Um, so now moving to the, the 90-day rule and, uh, the ADA and Title VII claims. Uh, Walgreens argued for dismissal of those claims on the basis that they were untimely. Uh, that's because to be timely, the statute requires a plaintiff to file the lawsuit within 90 days of receipt of the notice of right to sue from the EEOC. That's not jurisdictional. Uh... That's a 90-day rule. You agree to that? Correct, Your Honor. That is more in the nature of a statute of limitations defense. And we've also said it's an affirmative defense, right? Uh, yes, Your Honor. Haven't we also said you can't decide affirmative defenses on a 12b6? Well, Your Honor, I, I think it's a little bit... I mean, sorry, let me rephrase. You can't decide affirmative defenses on a 12b6 unless the complaint or a document to the integral to the complaint establishes the affirmative defense as a matter of law. Yes, Your Honor, and we believe that's exactly what the situation... What document that's integral to the complaint establishes the matter of law of the affirmative defense? So the notice of right to sue, uh, which... How is that, is, is that quoted in the complaint? Uh, there is an allegation in the complaint that the, uh, complaint was timely filed within 90 days... Okay, but there's nothing in the... There's nothing in the complaint about when the right to sue letter was received, right? Uh, no, Your Honor, but... Was the right to sue letter attached to the complaint? It was not, Your Honor. So why is it integral to the complaint? Well, it's our view, Your Honor, that because the complaint includes an allegation, uh... That it's timely? That it was... That the complaint was filed within 90 days of receipt of the notice of right to sue. So that means we can go outside the four corners of the complaint to figure out whether that assertion is true? That would be our, our position, yes, Your Honor. Wait, but that's... I mean, that would really do some real violence to Rule 12b-6, right? Because I presume there are lots of things in complaints that defendants think are not, in fact, true. Complaints allege things all the time the defendants think are false. Right, Your Honor, but I, I think, you know, our view here is that the... Because the complaint made a specific reference to the notice of right to sue, and the notice of right to sue bears that mailing date of September 20th. The... And applying the three-day presumption, the document controls... Hold on, but I'm just thinking through the... I'm thinking through the implications of that, and they're sort of breathtaking. The complaint, for example, says during a meeting, my supervisor used a epitaph to refer to me. And then the defendant says, motion to dismiss, here's a recording of that meeting. And as the recording will show, the epitaph was never used. You could never consider that on 12b-6, right? Well, I, I think that's an interesting question, Your Honor. I think that... Really? You think that's interesting? Or you think it's obvious that you can't do that? Well, I think that there's a distinction between a written document and a recording, which is subject to questions of authenticity. I would think that a recording is subject to fewer questions of authenticity. I can literally listen to it and hear what someone says. If you have a document, someone say, that might not be the document, or there's a later document. I got another letter, another letter at a different date on it. I mean, really? Well, Your Honor, I mean, I think that, you know, again, it's our view that it was incorporated into the complaint, and the document speaks for itself as to the date of mailing. What's your best authority for the... What is... Okay, so let me ask you this. What is your best authority for the proposition that just because the complaint alleges that the suit was timely, which it seems to me the complaint probably needs to allege, or at least I suspect the vast majority of employment discrimination complaints do in fact allege, what's your best authority for the proposition that that incorporates the right to sue letter into the complaint? Your Honor, I'm happy to pull a citation for you here. Great, thank you. So we cited in our papers the Bratcher case, which is at 545 Epsop, Epsop 2nd... So Epsop, that is a district court case, right? That's correct, Your Honor. You have nothing from the Supreme Court or this court that says that? Not as I stand here today, Your Honor, but I would be more than happy to submit supplemental briefing on that question if the court would like that. Well, the Goodman case that your counsel on the other side brought up, I mean, that's a case you ought to look at, I mean, because this is very critical and it almost goes to the same question I asked. How do you just say 90 days, I met it and that's enough? Well, it goes for you too. How do you just say, okay, it's not met and then you incorporate something, it incorporates something that goes along with you saying that? But the Goodman case says, basically, in rare instances, rare instances, if those facts are alleged in the complaint, then you can proceed with it with affirmative defense. Right, Your Honor. So it would be our view that once a document is incorporated into the complaint, which again, I understand your concerns there, Your Honor, it is essentially alleged as part of the complaint. It's integral to and therefore incorporated into the complaint. And so... That's the problem we've got. This is essentially alleged and incorporated in terms of that. So it really gets tenuous. It's a rare instance it's going to be done in the first instance. The question is, you know, it's done, are the facts alleged in there to establish it? And when you get on this level, you start saying, well, you get to look at this, and, you know, after you bring it in, there's still the question of a lot of smoke being brought about, a whole lot of dates all over that document. And, you know, maybe the handwritten notes don't trump the actual date, the signature or the certification, the court called the certification meets. But there's a lot of stuff there. Why should we make this one of those rare instances? Right, Your Honor. So I would just point out that the copy of the notice of right to sue that was attached to our motion was Walgreen's copy. And as counsel for the EEOC noted, that handwritten notation there was made by an employee of Walgreen's. The plaintiff below has not come forward with her copy of the notice of right to sue, a postmarked envelope, or even an allegation as to the date of receipt. But instead, what she did allege is that the complaint was timely filed. The document shows in our view that that is not true. And the document controls over the allegation when a document that is integral to incorporated into a complaint is contradictory to the written allegation of the complaint itself. So I'm happy to answer any further questions on the 90-day rule issue. Otherwise, I would just touch briefly on the Section 1981 claim, if in fact the court concludes that it possesses jurisdiction here. And on that point, it's the case that this court can affirm on any basis in the record, even if the reasoning of the district court differed. Here, it's our view that the appellant has not stated a claim for race discrimination under Title VII or Section 1981 because those two claims rely on a common set of facts. In essence, the allegations relevant to race discrimination boil down to one, the allegation that she was subjected to race discrimination. Two, the allegation that she was treated, quote, different and worse than non-Black co-workers. And three, that she was terminated due to race discrimination. All of this you're asking us to do, district court has not done or did not do. That's correct, Your Honor. But I believe that this court . . . You heard Judge Gregory says, do we do, are we here to do the district court's job or should we do it when we have an audience like this and we're just off the top of our head looking at the record or should we just send it back? Well, Your Honor, I think that's a fair point. But I guess what I would say is that the district court will be looking at the same record as this court, that is the complaint. And it seems to us this complaint does not state a claim for race discrimination and that is obvious on the face of it. So given that is a document that's of course in the record, that provides an avenue for this court to affirm. So you argue judicial economy? Yes, Your Honor. This is a case that was originally filed in 2019. The Eastern District of Pennsylvania transferred venue in 2020. And for whatever reason, nothing happened for two years. The case was never opened in North Carolina. So it's our view that, you know, this case has been kicking around long enough and there's no reason to go back to the district court if the record as presented to this court would support affirming the dismissal of that claim. I want to go back to just clear and make sure because you don't get a chance to come back and I don't want to pass counsel. You don't get a chance to have a retort. But you filed a motion to dismiss. Didn't it include the 1981 issues? Well, you said they didn't file, didn't state a claim, right? That's correct, Your Honor. We moved pursuant to 12b-6 arguing that the 1981 claim pales under complaint. Right. Right. And so you're saying that when the court was solely looking at just the, not, they weren't, they weren't there with the whole motion to dismiss when he said that to the extent the other portions are moot because weren't they, wasn't the court looking at the whole thing? You said that you're pleading that they failed the state section 1918-1981 action, didn't you? And you said, right, that was in part of your papers to the court. It was, Your Honor. So that was before the court, correct? And it said to the extent all the other portions are, right, dismissed. But they're moot because I've knocked it out because it's not across the board. There's no stating of a claim, period. So what now, why are you limited to say, oh, no, that was just this, not that? Wouldn't it cover everything? I'm getting to in terms of everybody says a mistake or wrong, but the court said the rest of it is moot. And for the plaintiff now is to come to this court for appellate relief. It's not about whether that was right or wrong. We could pick through that. That's not before us. But you said that it failed to state a claim across the board, period. And that's what the court said. I'm going to deal with this one right here. But to the extent the other portions of the motion, portions, which included your claim, I don't need to deal with that because you did put that in play. So I don't understand why you'd say that. Can you answer that question? Of course, Your Honor. So the 12B1 portion of the motion, which is the portion that was granted by the district court, was addressed only to the Title VII and the ADA claim. It was not addressed in any way at the 1981 claim. The court granted Walgreen's motion only to the extent it was brought pursuant to 12B1. But there was no argument that the 1981 claim was subject to dismissal under 12B1. So in denying the remainder of the motion as moot, that is the portion brought pursuant to 12B6, which was aimed at the 1981 claim, we don't believe that the court has actually adjudicated that claim, which is why it's our position that there's no appellate jurisdiction here. So under this record, then, there's no way the court could have thought that it did broadly, your motion to dismiss included those. Based on my reading of the order, Your Honor, I don't see that. But again, if... And he did close the whole case out. That is correct. Which would be consistent with the interpretation I'm talking about, right? I suppose it would, yes, Your Honor. So why should we, our jurisdiction hinge on your interpretation of it when the court clearly dismissed the case and was dealing with your across-the-board motions to... You said it didn't fail the state of claim, period. That's what you said. Well, Your Honor... It has failed the state of claim under Title VII or Section 1981. That's what you were arguing with the court the whole time. The court saw these papers and said, I don't need to deal with the rest of it based on this. It's finished. It's done. Isn't that the time to come to the appellate court? And I'm over time here. I'm talking to you, so you're okay. Okay. Thank you, Your Honor. So we did not argue that the ADA claim, for example, fails to state a claim. We argued that the Title VII claim and the 1981 claim did fail to state a claim. But that the Title VII claim was subject to dismissal for two reasons. One, because it was not filed within 90 days. And two, because it failed to state a claim. The court granted the motion only, as far as we read it, only as to that first argument on the 90-day rule issue. All right. Go ahead. So, if a court has properly enters an order, insofar as those two claims, but not the other one, what indicates that that's not functionally flawed? And in other words, we don't take piecemeal type appeals. We typically send it back and says, get the whole thing. We don't, we don't take. You got part of it right or the part you didn't get right. Because it's got to be a final judgment. I completely agree, Your Honor. So, it's not a final judgment on Section 1981. I totally agree, Your Honor. We don't take appeals from things that are not final judgments. So, why would we take part of the appeal? This is not a qualified immunity case or something like that, where you got a basis for doing so. And if we start this, then where does it end? Right, Your Honor. And that's why it's our view. You'll come back up inside of cases. You did in this case here. You need to do it again. Right, Your Honor. So, again, it is our view that the case should go back to the district court simply because there is no jurisdiction here. I mean, it would be great to have it resolved for the considerations of judicial economy that Your Honor raised earlier. But considerations of judicial economy cannot sort of supersede the requirement of appellate jurisdiction. Okay. All right.  Thank you. Thank you, Mr. O'Halloran. Mr. Vance, do we have a little time left? Three minutes, I think, Your Honor. So, I want to address a couple of points that Judge Wynn wrote. Would you be okay with sending the whole case back to the district court at this point? Yes, I would as long as the order that sends the case back instructs the district court to allow the parties to take discovery on the 90-day issue. Wait, how can a court conclude it lacks appellate jurisdiction and then give some gratuitous advice to the district court of what it's supposed to do on remand? Doesn't lacking appellate jurisdiction mean you lack appellate jurisdiction? Right, but that's not what I'm saying. I'm not saying send it back because you lack appellate jurisdiction. Sorry, thank you. I misinterpreted you. Yeah, I'm saying send it back because it should be sent back because it should be sent back so that the Section 1981 claim is addressed and it should be sent back on the issue of the 90-day requirement. Because I think as Judge Wynn pointed out, in the complaint, I allege that the plaintiff filed the complaint within 90 days of receipt of the notice of right to sue. If the defendant answers a complaint, deny that, asserted the affirmative defense of the statute of limitations. And defendant has a burden on affirmative defense. That's absolutely correct. And as long as I've been practicing law, once these issues are joined, the way that they are resolved is you take discovery and resolve the issue, which is our point from the very beginning, which is that the district court, if the issue, if the defense claims that the 90-day requirement was violated, then prove it. Let us take discovery. Depose Ms. Weaver. Let's depose the counsel for Walgreens who wrote a notation on the document. Depose the relevant people from the district office of the EEOC on that particular issue, on that limited issue of the 90-day requirement, if that's what the district court wants to do. But you cannot simply take an allegation made by the plaintiff in a complaint and on a 12B1 motion to dismiss, which is entitled to be accepted as true, and basically say it's not true, based on evidence or quote unquote evidence that the defense presents that the plaintiff has no opportunity to contest under the normal rules of how we proceed in district court. So that's the only point I wanted to make on rebuttal, is that the issue, at least with the plaintiff, is clear. The district court's error was in not allowing the parties to take discovery on the issue of the 90-day requirement. And this court does have jurisdiction because, as Judge Gregory pointed out, the order, the judgment, which we're talking about, not the order that accompanied the judgment, but the judgment is crystal clear when it says this case is closed. And hence, we're here. Thank you. Thank you. There's the man, our counsel. We'll come down and greet counsel and proceed to our next case.
judges: Roger L. Gregory, James Andrew Wynn, Toby J. Heytens